IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Suzanne MCKEON, | |
| Plaintiff, | Civil No. 18-12739 (RBK) |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**KUGLER**, United States District Judge:

This matter comes before the Court on Plaintiff Suzanne Mckeon's appeal from the Commissioner's final decision denying her application for benefits under the Social Security Act. (Doc. No. 1.) For the reasons below, the Commissioner's decision is **AFFIRMED**.

**I.   BACKGROUND**[1]

**A.  Procedural History**

Plaintiff filed an application for disability benefits on April 28, 2014, alleging disability beginning on July 5, 2011. (R. at 19.) On that date, Plaintiff tripped on a rug, broke her left hip replacement, and could not return to work thereafter. (R. at 44.)

Plaintiff's disability claim was denied initially and again on reconsideration. (R. at 19.) Plaintiff then filed a request for a hearing, which the Administrative Law Judge ("ALJ") held by video on June 8, 2017. (R. at 19.) In a decision dated July 6, 2017, the ALJ found that Plaintiff was not disabled. (R. at 16–36.) The Appeals Council denied Plaintiff's request for review,

---

[1] The Court recites only the facts that are necessary for context and to its determinations on appeal.

1

rendering the ALJ's decision the Commissioner's final decision. (R. at 1.) Plaintiff now appeals that decision to this Court. (Doc. No. 8 ("Pl.'s Br.").)

**B. Plaintiff's History**

Plaintiff was born on February 13, 1973 and lives with her fiancé and their two young children. (R. at 43–44.) Plaintiff testified that she spends her days taking care of her children and getting them ready for school each morning. (R. at 57.) Plaintiff also does some housework, prepares meals, sorts beads or does projects, and may flip through television channels or try to read a book, though reading now causes Plaintiff to become confused. (R. at 57–58.) Depending on what items are needed and her level of pain, Plaintiff shops for groceries in the store. (R. at 59.) Plaintiff likewise attends medical appointments. (R. at 59.) Plaintiff noted that she showers on her own, though she needs some assistance to bend while shaving her legs and while bending to put on her shoes and socks. (R. at 62–63.)

Plaintiff formerly worked as a branch manager for a credit union. (R. at 45.) Plaintiff's job included taking loan applications, supervising staff, and making business calls. (R. at 46.) As branch manager, Plaintiff was on her feet often and carried coin boxes that weighed up to 50 pounds. (R. at 46.) Before becoming a branch manager at the credit union, Plaintiff worked as an assistant branch manager at other banks performing similar duties. (R. at 46.) Plaintiff also worked other jobs—starting at a young age, Plaintiff babysat, waitressed, and did chores on the farm where she grew up. (R. at 60–61.)

Plaintiff has a long medical history of hip issues, which date back to an old motor vehicle accident. (R. at 505.) As noted above, Plaintiff aggravated her hip issues in 2011 when she tripped and broke her left hip replacement. (R. at 44.) Thereafter, Plaintiff received a left hip arthroplasty revision on July 25, 2011. (R. at 352.) Plaintiff testified that the pain in her hip and femur from

2

the surgery is sporadic and unpredictable. (R. at 49.) Plaintiff similarly testified that she sometimes experiences sharp shooting pain or complete numbness in her hip or leg and foot. (R. at 49.) Plaintiff noted that this pain caused her to trip or fall. (R. at 50.)

Plaintiff offered additional information on her lower body issues. She testified that sometimes, her leg goes numb and she must sit and shift her weight to her right side—her good side—after about 10 to 15 minutes of standing. (R. at 51.) She also testified that she can walk about 200 feet before having to stop and sit down. (R. at 51.) Plaintiff further noted that she can walk for about 10 to 15 minutes at a slow pace with her cane before she must stop. (R. at 51.)

Given her injuries, Plaintiff could not return to work and waited to file a disability claim in the hopes that she would get better. (R. at 61.) After she did not improve, Plaintiff began making jewelry and attending craft shows with her fiancé. (R. at 44.) She also taught a jewelry design course at Cape May County Vocational School from 2015 to 2016. (R. at 45.)

### C. Relevant Medical History

Plaintiff has seen several doctors about her hip issues. The Court briefly discusses the relevant notes below.

#### 1. Dr. Thomas Barrett

After Plaintiff's hip surgery, Plaintiff saw Dr. Thomas Barrett on September 6, 2011. (R. at 390.) During this visit, Dr. Barrett noted that Plaintiff was still not weight bearing and that Plaintiff would work with a therapist to move from using two crutches to one crutch. (R. at 390.) Plaintiff met with Dr. Barrett again on March 20, 2012. (R. at 391.) During this visit, Dr. Barrett noted that Plaintiff was doing well and reported that Plaintiff was not using crutches, a walker, or a cane. (R. at 391.) Dr. Barrett also opined that Plaintiff was limited to low impact activities for the rest of her life and that she reached "maximum medical improvement." (R. at 391.)

After three years without seeing the doctor, Plaintiff saw Dr. Barrett again on February 24, 2015. (R. at 505.) During this meeting, Dr. Barrett ordered a bone scan on Plaintiff's left hip because she complained of ongoing pain. (R. at 505–507.) Dr. Barrett reviewed the bone scan during a subsequent visit and noted no abnormalities. (R. at 503.) Dr. Barrett indicated that he could provide no further treatment to Plaintiff at this time. (R. at 503.)

### 2. Dr. Ralph Cataldo

Plaintiff saw Dr. Ralph Cataldo on July 17, 2012 in connection with a workers' compensation claim. (R. at 508.) At this visit, Dr. Cataldo noted that Plaintiff had a scar over her left hip and noted that she had limited hip mobility. (R. at 508–512.) He also noticed an altered ambulation and assessed Plaintiff at 80 percent disability based on her left hip injury. (R. at 511.)

### 3. Dr. Ronald Bagner

Plaintiff met with Dr. Ronald Bagner on July 10, 2014 for a consultative examination. (R. at 487.) Dr. Bagner observed Plaintiff ambulating at a reasonable pace but with a left limp. (R. at 487.) Dr. Bagner also noted that Plaintiff got on and off the table without difficulty, got dressed without assistance, was not uncomfortable in the seated position, and did not use a cane or other assistive device during this visit. (R. at 487.)

### 4. Dr. William Dennis Coffey

At the request of the Social Security Administration, Dr. William Dennis Coffey evaluated Plaintiff for a consultative psychological evaluation and noted that Plaintiff's gait was stiff and limp. (R. at 494.) Dr. Coffey also noted that Plaintiff sat on her right hip during the examination rather than on her left hip where she experienced pain. (R. at 494.)

### D. ALJ's Decision

In evaluating the evidence of record, the ALJ followed the five-step sequential process for evaluating disability claims and found that Plaintiff was not disabled. (R. at 19–31.) The ALJ found as follows.

At step one, the ALJ found that Plaintiff engaged in no substantial gainful activity since her alleged onset date. (R. at 21.) At step two, the ALJ found that Plaintiff had several "severe" impairments: status post left hip replacement, failed hip protheses, total hip arthroplasty revision, fibromyalgia, and hypothyroidism. (R. at 22.) At step three, the ALJ found that Plaintiff did not meet or medically equal the requirements of a Listed Impairment, including Listing 1.02 (major dysfunction of a joint) or Listing 1.03 (surgery involving a major weight-bearing joint). (R. at 23.) Thus, the ALJ found that Plaintiff was not presumptively disabled at step three. (R. at 23.)

The ALJ then formulated Plaintiff's residual functional capacity ("RFC"). (R. at 23–29.) The ALJ found that Plaintiff retained the RFC to perform sedentary work, but with the following limitations. The ALJ found that Plaintiff could never climb ladders, ropes or scaffolds, and could never crawl. (R. at 23.) The ALJ also found that Plaintiff can frequently handle and finger with her bilateral upper extremities, could occasionally climb ramps and stairs, balance, stoop, kneel, or crouch, but could not push, pull, or operate foot controls with her left lower extremity. (R. at 23.) The ALJ likewise found that Plaintiff needed a cane or other assistive device to ambulate. (R. at 23.)

Although the medical evidence supported that Plaintiff's impairments limited her functioning as noted above, the ALJ further found that the record did not support that the impairments were as severe as Plaintiff alleged. (R. at 26.) In making this determination, the ALJ relied on various pieces of medical evidence discussed more fully below, as well as Plaintiff's

range of activities of daily living. (R. at 26–27.) The ALJ reasoned that if Plaintiff's impairments were as severe and disabling as she alleged, the tests would have shown more limitations and that she would not have been able to perform her range of activities. (R. at 26–27.)

Based on Plaintiff's RFC, the ALJ found that Plaintiff could perform her past work as a branch manager as that work is generally performed in the national economy through her date last insured of March 31, 2016. (R. at 30–31.) Accordingly, the ALJ found that Plaintiff was not disabled and entitled to benefits. (R. at 31.)

## II. LEGAL STANDARD

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *See Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing 42 U.S.C. §405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). This Court may not set aside the Commissioner's decision if it is supported by substantial evidence, even if it "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F.Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere

conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds. First, Plaintiff claims that the ALJ erred at step three of the evaluation process by finding that her impairments did not meet Listing 1.02 or 1.03. (Pl.'s Br. at 19.) Second, Plaintiff claims that the ALJ erred in calculating her RFC. (*Id.*) The Court disagrees on both scores.

### A. The ALJ Did Not Err at Step Three

Substantial evidence supports the ALJ's findings that Plaintiff's hip issues did not meet the criteria of Listing 1.02 (major dysfunction of a joint) or Listing 1.03 (surgery involving a major weight-bearing joint). That is because a claimant is not entitled to presumptive disability under either Listing unless the claimant shows that she has an "inability to ambulate effectively," meaning that the claimant requires "the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Part 404, subpart P, Appendix 1, § 1.00(B)(2)(b); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.02(A), 1.03. Indeed, at step three, the claimant bears the burden to meet each part of a Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 531, (1990). And as the ALJ correctly explained here, Plaintiff presented no evidence that she cannot ambulate effectively. (R. at 23.) Instead, Plaintiff suggests that she can make that showing by directing this Court to evidence that she used a cane, walked with a limp, and had an antalgic gait, even though such evidence does not show limited functioning of both upper extremities. (Pl.'s

7

Br. at 25–27.) Because Plaintiff did not (and still has not) adduced evidence to meet each part of these Listings, the ALJ's step three conclusion was not in error, and no further explanation was required.

Plaintiff's related argument also fails. Plaintiff contends that the ALJ failed to consider evidence of ineffective ambulation after her date last insured. (Pl.'s Br. at 27–28.) But as noted above, Plaintiff points to no record evidence to show ineffective ambulation during the allegedly unconsidered period of time. Because a court has "no basis" to remand when a claimant "entirely sidesteps the question" of "*how* [the claimant] might have prevailed at step three if the ALJ's analysis had been more thorough," Plaintiff cannot obtain a remand on this ground. *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (emphasis in original).

**B. The ALJ Did Not Err in Calculating Plaintiff's RFC**

Nor can Plaintiff obtain a remand based on the ALJ's RFC determination. Plaintiff claims that the ALJ erred in finding that the evidence did not support Plaintiff's accounts of the severity of her pain. (Pl.'s Br. at 30–31.) Although Plaintiff also summarizes various aspects of the decision and mentions vocational expert testimony, she makes no specific arguments on these points. (*Id.* at 28–31.) Thus, the only argument before the Court is that the ALJ erred by not entirely crediting Plaintiff's accounts of her symptoms.

To succeed on this claim, Plaintiff bears a heavy burden, as credibility determinations are "virtually unreviewable on appeal." *Hoyman v. Colvin*, 606 F. App'x. 678, 681 (3d Cir. 2015); *see also Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). Indeed, an ALJ need only "give the claimant's testimony 'serious consideration,' state her reasons for accepting or discounting it, and make 'specific findings.'" *Pergentile v. Berryhill*, No. 16-cv-1381, 2018 WL 5730173, at *8 (D.N.J. Nov. 1, 2018) (quoting *Rowan v. Barnhart*, 67 F. App'x 725, 729 (3d Cir. 2003)). When

this occurs, "a reviewing court will defer to the ALJ's credibility determination." *Id.*; *see also Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 188–89 (3d Cir. 2007) (noting that when "the ALJ has articulated reasons supporting a credibility determination," that determination is owed "great deference").

An ALJ may find a claimant's statements about the extent of her symptoms less than fully credible if there are "inconsistencies in a claimant's testimony or daily activities." *Cowley v. Comm'r of Soc. Sec.*, No. 16-cv-4800, 2017 WL 4548265, at *9 (D.N.J. Oct. 12, 2017) (citing *Burns v. Barnhart*, 312 F.3d 113, 129–30 (3d Cir. 2002)). Indeed, when evidence is inconsistent, "the ALJ retains significant discretion in deciding whom to credit." *Ganges v. Commisioner of Social Sec.*, No. 17-cv-1982, 2018 WL 5342717, at *11 (D.N.J. Oct. 29, 2018) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).

Here, substantial evidence supports the ALJ's credibility determinations for several reasons. First, in finding that Plaintiff overstated the extent of her symptoms, the ALJ relied on notes from various doctors that reflected "normal observations." (R. at 26.) Accordingly, the ALJ reasonably inferred that if Plaintiff was as limited as she claimed, the notes would have reflected greater limitations. (R. at 26.) Of course, Plaintiff disagrees with the ALJ's inference. (Pl.'s Br. at 30.) But that does not invalidate the ALJ's permissible reasoning. *See Centeno v. Comm'r of Soc. Sec.*, No. 17-cv-12284, 2019 WL 413532, at *9 (D.N.J. Jan. 31, 2019) (finding no error in ALJ's assessment of Plaintiff's alleged pain and limitations when the ALJ made "a reasonable inference drawn directly from the objective evidence of record").

Second, the ALJ noted inconsistencies in Plaintiff's functioning that called into question the severity of Plaintiff's impairments. (R. at 26–27.) Specifically, the ALJ noted that Plaintiff performed work activity like making jewelry and engaged in a range of normal daily activities like

caring for her children, doing house chores, watching television, reading, and caring for her own hygiene. (R. at 26–27.) Again, Plaintiff may disagree with the inference drawn. (Pl.'s Br. at 31.) But this Court will not disturb the determination that an ALJ is specifically empowered to make based on inconsistent evidence. *See Cowley*, 2017 WL 4548265, at *9. In other words, the ALJ was entitled to reasonably infer from these facts that Plaintiff overstated the extent of her allegedly disabling impairments.

Finally, the ALJ explained that Plaintiff's description of the severity of her impairments was not consistent with objective testing, including multiple x-rays of Plaintiff's hip that showed no complications, a normal ultrasound, and a largely normal bone scan. (R. at 26–27.) Plaintiff does not meaningfully refute these findings. (Pl.'s Br. at 31.) Instead, Plaintiff again asserts disagreement with them. (*Id.*) For the reasons already stated, the Court will not second guess the ALJ's well-explained findings here.

## IV. CONCLUSION

For the reasons above, the Court **AFFIRMS** the Commissioner's decision denying Plaintiff's application for benefits. An Order shall issue.

Dated: 8/19/2019 /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge